IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| PATTE JO WILSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-20-202-SPS |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of the Social | ) |
| Security Administration,[1] | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Patte Jo Wilson requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security

---

[1] On July 9, 2021, Kilolo Kijakazi became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Kijakazi is substituted for Andrew M. Saul as the Defendant in this action.

Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was fifty-four years old at the time of the administrative hearing, and she turned fifty-five years old eight days following the issuance of the ALJ's decision (Tr. 22, 29, 53). She completed two years of college and has previously worked as a school secretary and tutor (Tr. 40, 199). The claimant alleges that she has been unable to work since an amended alleged onset date of December 1, 2017, due to osteoarthritis, spinal stenosis, bulging discs, diabetes, neuropathy in the feet, and acid reflux (Tr. 198).

### Procedural History

On September 5, 2017, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Her application was denied. ALJ Doug Gabbard, II, conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated May 30, 2019 (Tr. 12-22). The Appeals Council denied review, so the ALJ's opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. § 404.981.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. At step four, he found that the claimant had the residual functional capacity ("RFC") to perform medium

work as defined in 20 C.F.R. § 404.1567(c), except that she could only occasionally climb, balance, and stoop; frequently reach, including overhead with her left arm, as well as grasping and fingering bilaterally; and never kneel, crouch, or crawl.  Additionally, he found she must be allowed to alternately sit/stand every fifteen to twenty minutes throughout the workday for purposes of changes in position, but without leaving the workstation (Tr. 17).  The ALJ then concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work that she could perform in the national economy, *e. g.*, furniture-rental clerk and counter clerk (Tr. 20-22).  The ALJ further found that the claimant could perform the job of information clerk when she attained the category of advanced age (Tr. 21-22).

## Review

The claimant's sole contention of error is that the ALJ failed to properly consider her borderline age situation.  The Court agrees with the claimant's assertion, and the decision of the Commissioner must therefore be reversed.

The ALJ found that the claimant had the severe impairments of lumbar spine degenerative disc disease, mild cervical spine degenerative disc disease, mild osteoarthritis of the bilateral knees, mild osteoarthritis of the bilateral hips, mild osteoarthritis of the bilateral feet and ankles, degenerative changes of the right shoulder, calcific tendinitis of the supraspinatus of the left shoulder, and mild right elbow degenerative joint disease (Tr. 14).  He further found that numerous other medically determinable impairments were nonsevere (Tr. 15).

At the administrative hearing, the ALJ elicited testimony from a vocational expert ("VE") regarding the claimant's past work and whether she could perform those jobs or if there were other jobs she could perform.  The VE identified the claimant's past work as a school secretary, which was a sedentary, skilled job that she performed at the medium level, as well as a tutor, which was a light skilled job (Tr. 52).  The VE identified the claimant's transferrable skills as clerical skills such as "reading and writing reports, operating some office equipment, data entry" (Tr. 53).  The ALJ then posed to the VE a hypothetical person with the same age, education, and experience as the claimant who could perform "medium work, with occasional climbing of ramps and stairs, occasional reaching, including overhead with the right dominant arms." (Tr. 53).  After some discussion and clarification, the VE concluded that such a person would not be able to perform the claimant's past relevant work, but she was able to identify two "light" jobs, *i. e.*, counter clerk, DICOT § 249.366-010, and furniture rental clerk, DICOT § 295.357-018 (Tr. 54).  The ALJ then added the following limitations to the original hypothetical:

> This person is limited to occasional climbing and balancing—climbing, balancing, and stooping.  No kneeling, crouching, or crawling.  Frequent reaching including overhead with her left arm.  As I said before, occasional reaching overhead with her right dominant arm.  Frequent grasping and fingering.  And she must be allowed to alternately sit and stand every 15 to 20 minutes throughout the workday, for the purpose of changing positions, but without leaving the workstation.

(Tr. 54-55).  The VE again identified the counter clerk and furniture rental clerk jobs as appropriate for that hypothetical (Tr. 55). The ALJ then asked the VE to identify jobs a person could perform based on those two hypotheticals and which would use transferable

skills (Tr. 56). The VE identified the sedentary job of information clerk, DICOT § 237.367-022 (Tr. 56-57).

In his written opinion at step two, the ALJ determined the claimant's severe and nonsevere impairments, and at step four he summarized the medical evidence in the record, including the claimant's testimony and the relevant treatment notes (Tr. 14-20). He then determined the claimant could not return to her past relevant, but that she could perform the jobs of furniture-rental clerk and counter clerk, which have a light exertional level, and further found she could perform the job of information clerk upon attaining the category of an individual of advanced age, which required skills acquired in the claimant's past relevant work but no additional skills (Tr. 21-22).

The claimant argues that the ALJ, despite finding she had transferable skills, erred in failing to consider that she fell into a borderline age range for purposes of disability evaluation because there is a heightened standard for transferable skills to a sedentary job when considering a borderline age situation. Under 20 C.F.R. § 404.1563,[3] the Commissioner has established three age categories, two of which apply here: (i) a "person closely approaching advanced age," age 50-54, and (ii) a "person of advanced age," of 55 or older. For a person closely approaching advanced age, "we will consider that your age along with a severe impairment(s) and limited work experience may seriously affect your ability to adjust to other work." 20 C.F.R. § 404.1563(d). For a person of advanced age,

---

[3] The claimant's date last insured is December 31, 2022. As such, for purposes of evaluating whether the claimant's age is in the borderline in this case, the date of the ALJ's decision, May 30, 2019, is used.

"age significantly affects a person's ability to adjust to other work." 20 C.F.R. § 404.1563(e). On the date of the ALJ's decision, the claimant was 54 years old, approximately eight days away from turning 55.

The ALJ is instructed to "not apply the age categories mechanically in a borderline situation." 20 C.F.R. § 404.1563. A borderline situation exists "when the claimant is within 'a few days or months" of the next category[,]" *Daniels v. Apfel*, 154 F.3d 1129, 1133 (10th Cir. 1998), and, using the next higher age category would result in a disabled determination. 20 C.F.R. § 1563(b). Courts have differed on what qualifies as falling within the borderline range. *Compare Cox v. Apfel*, 166 F.3d 346 (10th Cir. 1998) (unpublished table opinion) (error where Plaintiff was within six months of next age category), *with Lambert v. Chater*, 96 F.3d 469, 470 (10th Cir. 1996) (claimant did not fall into borderline category where she was seven months short of the next category). However, "it is clear that the ALJ must address the issue." *Nugent v. Colvin*, 2014 WL 4854733, at *2 (E.D. Okla. Sept. 30, 2014) (*citing Byers v. Astrue*, 506 Fed. Appx. 788, 791 (10th Cir. Dec. 27, 2012)). *See also Daniels*, 154 F.3d at 1133-1134 n.5 ("Determining whether a claimant falls within a borderline situation appears to be a factual rather than discretionary matter, and the ALJ erred by not making the necessary factual finding."). Here, the ALJ did not discuss the borderline nature of the claimant's age, but simply made separate findings for each age category.

But in a borderline age situation where transferable skills are implicated, the ALJ is required to establish: (i) that the claimant could transfer to the job identified, and (ii) that it was "so similar to her past work that she could be expected to perform [it] at a high

degree of proficiency with minimal job orientation." *Webster v. Barnhart*, 187 Fed. Appx. 857, 860 (10th Cir. 2006). The claimant contends that while the ALJ met the first requirement, he failed to meet the second. Although the ALJ assigned the claimant a medium RFC, the only job identified as to this claimant for a person of advanced age was the semi-skilled sedentary job of information clerk. Because the ALJ based his decision on the claimant's ability to perform a sedentary job that existed in significant numbers, the Court will be guided by the regulations governing claimants of advanced age who are limited to sedentary work. *See, e. g.*, *Webster*, 187 Fed. Appx. at 859 ("Because the ALJ based the denial of benefits on Webster's ability to perform other sedentary jobs that exist in significant numbers in the national economy, the parties agree that the regulations governing claimants of advanced age who are limited to sedentary work govern this case.").

"If you are of advanced age and you have a severe impairment(s) that limits you to no more than sedentary work, we will find that you have skills that are transferable to skilled or semiskilled sedentary work only if the sedentary work is so similar to your previous work that you would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry." 20 C.F.R. § 404.1568(d)(4). The claimant argues that the ALJ failed to make the proper findings with regard to vocational adjustment, and the Court agrees. At the administrative hearing, the ALJ made no inquiry as to whether the claimant could perform the job of information clerk with "minimal job orientation." There was simply a recitation of the general types of transferable skills that the claimant had acquired. And there is nothing in the record to

demonstrate the ALJ later made the appropriate finding or had evidence to support such a finding.

The Commissioner contends that Soc. Sec. Rul. 82-41 instructs that clerical skills have universal applicability across industry lines with very little vocational adjustment, and therefore the ALJ *did* make a sufficient finding that the claimant had transferable work skills requiring little if any vocational adjustment.  *See* Soc. Sec. Rul. 82-41, 1982 WL 31389, at *6 (Jan. 1, 1982).  But the Tenth Circuit has made it clear that general findings cannot be substituted for specific ones.  *See Webster*, 187 Fed. Appx. at 861 ("That the record contains evidence that may support a specific factual finding cannot substitute for the finding itself.") (*citing Allen v. Barnhart*, 357 F.3d 1140, 1144–45 (10th Cir.2004)).  *See also Stewart v. Colvin*, 2016 WL 8671487, at *4 (D. Colo. Apr. 15, 2016) ("[T]he record does not reflect any *findings* by the ALJ that plaintiff does, in fact, have skills of universal applicability.  In *Nielson* [*v. Sullivan*, 992 F.2d 1118, 1121 (10th Cir. 1993)], the court held that, pursuant to SSR 82-41, the ALJ was required, but failed, to 'make findings specifically targeted at the level of vocational adjustment needed for [a claimant of advanced age] to enter potential [positions identified by the VE].' 992 F.2d at 1121-1122.  As in *Nielson*, the record here lacks findings regarding the degree of vocational adjustment for plaintiff to perform the jobs identified by the VE.") (emphasis added) (*citing Webster*, 187 Fed. Appx. at 860).  Because the ALJ failed to make the necessary factual findings, the Court finds that the decision must be reversed and remanded for further proceedings.  *See also* SSR 82-41, 1982 WL 31389, at *7 ("When a finding is made that a claimant has transferable skills, the acquired work skills must be identified, and specific occupations to

which the acquired work skills are transferable must be cited in the State agency's determination or ALJ's decision."); *Paris v. Colvin*, 2016 WL 7438438, at *6 (W.D. Okla. Dec. 21, 2016) ("[T]he ALJ failed to even mention vocational adjustment in her decision, much less explicitly find little or no adjustment was required. Furthermore, although the ALJ recounts in her decision the transferable skills identified by the VE (the skills to identify and record information), [] she does not specify which of the skills apply to the other jobs the VE identified. The ALJ is tasked with the duty to make such findings, not the VE. The court may not make such a finding for the ALJ.") (*citing*, *inter alia*, *Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001) (A reviewing court is "not in a position to draw factual conclusions on behalf of the ALJ.") (citation omitted)).

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED, and the case is REMANDED for further proceedings consistent with this Opinion and Order.

**DATED** this 22nd day of September, 2021.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**